[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 9021
The parties intermarried on May 27, 1973 in Swamscott. Massachusetts. The plaintiff has resided continuously in Connecticut for fifteen years. There is one child of this union, and she has reached her majority. The evidence indicates that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The plaintiff is 47 years old. She holds an MBA degree from Columbia University and is currently employed performing services as a bookkeeper. She describes her health as "not great". She requires surgery which will determine if she has a serious medical problem.
The defendant is 48 years old. He is also well educated and has two master degrees from Columbia University in business and journalism. Defendant reports his health as being good.
The defendant has spent his working life in the administrative end of the radio broadcasting field. At various times he has held responsible positions for major radio networks. Unfortunately, this dissolution action comes at a time when the defendant has been terminated from full time employment and is engaged in part-time consultant work while seeking other opportunities.
Evidence was presented as to the cause of the breakdown of this marriage. As in most failed marital relationships, each party contributed to the breakdown. Although the court gave some credence to the defendant's reasons for the breakdown, under all the circumstances, the court finds that the defendant must bear the greater responsibility for the parties ending their relationship.
The court has carefully considered the criteria set forth in Connecticut General Statutes Sections 46b-62, 46b-81 and 46b-82
in reaching the decisions reflected in the orders that follow.
The following orders may enter:
(1) Periodic Alimony
As indicated above, the defendant is currently between full CT Page 9022 time jobs. The court believes that the defendant is earnestly pursuing employment and is optimistic that the defendant's efforts will be fruitful.
The court is basing the following periodic alimony award on the defendant's current earned income of $120,000 on an annual basis, and the plaintiff's earnings of $31,000 per year. The court recognizes that the order will not meet the plaintiff's current need or previous life style. However, the defendant has the same problems in meeting his expenses.
As soon as the defendant's fortunes change, the amount of the periodic alimony awarded today should be reviewed and revised appropriately.
Commencing September 1, 1997 and on the first day of each month thereafter, in advance, the defendant shall pay to the plaintiff as periodic alimony the sum of three thousand ($3,000) dollars. The payments shall continue until the death of either party or the plaintiff's remarriage whichever event first occurs.
Within one week of a change of employment or earned income, a party shall notify the other. Either may request the court to review the amount of alimony ordered because of the change.
The parties shall exchange information on an annual basis as to their sources of income, both earned and passive. The information exchanged shall include forms W-2, K-1 and 1099 as filed with the Internal Revenue Service. The obligation to exchange information shall commence on January 1, 1998 and continue for as long as the defendant is obligated to pay alimony or five years, whichever first occurs. The information shall be exchanged by January 31 of each year.
A contingent wage withholding order may enter.
(2) Division of Assets.
The court has based its orders on an estate of $1,806,000. It included the value of the marital residence as $1,000,000, reduced by the approximate costs of sale. It did not include the GEO automobile, the value of the home furnishings and jewelry, or the laser disc collection.
Wherever the court assigns an asset to one party that is CT Page 9023 owned jointly, the other party shall transfer his or her interest by executing all documents that are required to effectuate the transfer.
A. The plaintiff is awarded the marital residence located at 33 Pheasant Hill Road, Weston, Connecticut, subject to the outstanding mortgage which the plaintiff shall assume and pay. The plaintiff shall indemnify and hold the defendant harmless from any liability thereon and from any liability for property taxes and all other expenses of the residence.
B. The plaintiff is awarded the following additional assets:
1. Her entire interest in the condominium located at 925 Collins Avenue (Unit #709), Miami Beach, Florida;
2. The 1996 Nissan Automobile;
3. The 1993 GEO Automobile;
4. The savings and checking accounts at Citibank, People's, Boston and Westport Bank and Trust as shown on the financial affidavits having balances totalling $47,210;
5. U.S. Savings Bonds, listed at $600;
6. Assets Plus Investment Club;
7. Her People's Bank IRA;
8. Her Westport Resources-Sepp;
9. Her Security for Mastercard;
10. Her jewelry;
11. The sum of One Hundred Thousand ($100,000) dollars from the Citibank account #84173737;
12. One-half (50%) of the General Electric and Emmis Broadcasting Company stocks owned by the defendant;
13. One-half (50%) of the Lehman Brothers, Smith Barney, Citibank Portfolio and Prudential accounts owned by the parties; CT Page 9024
14. The defendant shall transfer to the plaintiff by Qualified Domestic Relations Orders (QDRO) fifty (50%) percent of his present interests in the following:
a. Emmis Profit Sharing;
b. GE Savings and Security Plan (Money Market);
c. GE Savings and Security Plan (Mutual Fund);
d. GAFCAP — Retirement Account.
The court retains jurisdiction to modify this portion of the judgment to ensure compliance with federal and/or state law relating to retirement/pension benefits.
C. The defendant is awarded the following assets:
1. The condominium located at 333 West 56th Street (Apt. 9F), New York, New York, subject to the outstanding mortgage, which the defendant shall assume and pay. The defendant shall indemnify and hold the plaintiff harmless from any liability thereon and from any liability for property taxes and all other expenses of the condominium;
2. The General Motors stock;
3. One half (50%) of the General Electric and Emmis Broadcasting Company stocks;
4. The Republic Steel and Reit stocks;
5. The Merrill Lynch account;
6. His U.S. Savings Bonds, listed at $2,500;
7. One half (50%) of the Lehman Brothers, Smith Barney, Citibank Portfolio and Prudential accounts owned by the parties;
8. His IRA at People's Bank;
9. The remaining one half (50%) of his retirement funds in Emmis Profit Sharing, GE Savings and Security Plan (Money Market), GE Savings and Security Plan (Mutual Fund), and GAFCAP Retirement account; CT Page 9025
10. The Frequent Flyer miles;
11. The balance in the Citibank account #84173737 after payment of $100,000 to the plaintiff.
3. Other Personal Property.
The defendant is awarded the following personal property which shall be removed by the defendant at a mutually convenient time by October 10, 1997:
a. The piano or grandfather's clock at the election of the plaintiff. If she declines to elect, the defendant is awarded the piano;
b. The defendant's desk from his father;
c. The antique chest from the defendant's mother;
d. The defendant's entire laser disc collection;
e. The antique barometer;
f. The miscellaneous items given to the defendant from his family;
g. Copies of any family photographs desired by the defendant with the copies made at the defendant's expense;
h. Any clothing or personal effects of the defendant remaining with the plaintiff.
All remaining personal property and furnishings shall remain with the plaintiff.
4. Liabilities.
 a. The plaintiff shall be responsible for the liabilities, including legal fees, scheduled on her financial affidavit. Her obligation to the Congregation Beth El — President campaign is $1,000.
b. The defendant shall be responsible for the liabilities, including counsel fees, scheduled on his financial affidavit. His CT Page 9026 pledge obligation to the President's Campaign at Congregation Beth El is $3,000.
5. Medical Insurance.
If COBRA medical insurance rights are available for the plaintiff, she shall be entitled to them at her cost.
Judgment may enter accordingly.
NOVACK, J.